LIEBERMAN et al. v. MULHERN STEAM HEATING CO. et al.

(Supreme Court, Appellate Term, First Department. May 19, 1916.)

1. BAILMENT ⟨⟩18(3)—LIEN—POSSESSION.

Under the statute, an artisan, who has performed work on personal property, has a lien for his services so long as he retains possession of the property.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 82; Dec. Dig. ⟨⟩18(3).]

2. BAILMENT ⟨⟩18(4)—LIEN—ASSIGNMENT—FORFEITURE.

A corporation, holding a lien on rugs for cleaning and storage, assigned its claim to its officers for the purpose of collecting the lien. Such officers also did work on the rugs. Held, that the assignment did not work a forfeiture of the lien, which continued until payment of the debt.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 84; Dec. Dig. ⟨⟩18(4).]

3. FRAUD ⟨⟩28—OBTAINING PROPERTY FRAUDULENTLY—DEFEAT OF LIEN.

Where the owner of rugs fraudulently secured possession of them from plaintiffs, who held them under a lien for cleaning and storage, by giving a check, payment of which was guaranteed, but thereafter refused, the lienholders are entitled to damages for such fraud and deceit.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 8, 26; Dec. Dig. ⟨⟩28.]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Bernard Lieberman and another against the Mulhern Steam Heating Company and another. From a judgment for defendants, after trial without a jury, plaintiffs appeal. Reversed, and judgment directed for plaintiffs.

Argued April term, 1916, before GUY, COHALAN, and WHITAKER, JJ.

Meyer D. Siegel, of New York City, for appellants.

Weschler & Kohn, of New York City (Jehial M. Roeder, of New York City, of counsel), for respondents.

WHITAKER, J.  This action was founded on fraud and deceit practiced by the defendants upon the plaintiffs in obtaining the possession

of personal property. The Tashjian Carpet Cleaning Company was a domestic corporation, engaged in cleaning carpets and rugs. It borrowed money from plaintiffs, and assigned to them certain outstanding accounts as security, among which was an account against defendants for the sum of $130.

On June 2, 1915, the Tashjian Company agreed with the defendants "to wash, clean, repair, and store during the summer months all rugs as per itemized statement for the sum of $130." The contract covered the rugs at Rosleigh Court and the Deerfield apartments. The Tashjian Company also agreed to have the rugs insured against fire and burglary for the sum of $4,000. The rugs were delivered to the Tashjian Company under the terms of the contract. The plaintiffs were officers of the Tashjian Company. The work was claimed to have been done on said rugs, and the testimony shows that the plaintiffs themselves did some of the work.

When the Tashjian Company assigned the claim to plaintiffs, the rugs were already in possession of plaintiffs. On September 7, 1915, plaintiffs notified defendant, Mulhern Steam Heating Company, that the rugs were in the possession of plaintiffs, that they were not insured, and that the claim for $130, which was due for work done on the rugs, had been assigned to plaintiffs. Thus it appears that the possession of the rugs by the plaintiffs was rightful, and that they claimed a lien thereon for work performed upon them.

[1] The defendants claimed that the lien of Tashjian Company was lost when the assignment was made to the plaintiffs. The cases cited by respondents do not so hold. They simply hold that the right to file a mechanic's lien is not assignable, but after the lien has been filed it may, together with the claim upon which it is based, be assigned. The statute as to artisans' liens creates the lien after the work has been done on the personal property; the lien is perfected by the performance of the work, and continues so long as the artisan retains "lawful possession thereof."

[2] The plaintiffs also did work on these rugs, as the record shows, and the Tashjian Company gave possession, not to defendants, but to the plaintiffs, for the purpose of collecting the lien which it claimed on the rugs, as the assignment to plaintiffs from the Tashjian Company indicates. There is no question, therefore, that the plaintiffs were justified in holding possession of the rugs until the claim for the work done on them was either paid or judicially determined to be invalid.

The plaintiffs offered to deliver the rugs to the defendants upon the payment of $130, money claimed to have been spent upon their improvement. The defendant went to plaintiffs' place of business on September 24, 1915, where the rugs were kept, and promised to pay the $130. Plaintiffs demanded cash or certified check. Defendant said it would give one or the other. Thereafter Woodward, the defendants' agent, returned a little later, and stated to the plaintiffs that there was not sufficient cash in the drawer of defendants to pay the $130, and that it was too late to get a check certified, and requested plaintiffs to accept an uncertified check for the amount. Plaintiffs refused, where-

upon Woodward gave plaintiffs an uncertified check for $130, together with the following guarantee:

"Mulhern Steam Heating Co., 103 Park Ave. (32d St.)

"September 24, 1915.

"The rugs for Mulhern St. H. Co. being delivered on payment by check, and we guarantee payment by bank when check presented.

"Mulhern Steam Heating Co.,
"A. B. Woodward, Treas."

Upon the receipt of this check and written guaranty, plaintiffs allowed the defendants to take the rugs. The defendant Mulhern Steam Heating Company, at or about the time the check was delivered, had already stopped payment of it. These facts are conceded by the defendants, and the defendant also testified that it was done under advice of his counsel, and the attorneys for defendants practically admit this in their brief.

[3] The defendants practiced a deliberately planned fraud upon the plaintiffs. They obtained the possession of the rugs by false and fraudulent statements and pretenses, and their counsel not only advised the defendants so to do, but now has the audacity to commend the actions of the defendants, and to ask this court to approve them.

The judgment should be reversed, with $30 costs, and judgment directed in favor of plaintiff for the sum of $130 and interest from December 24, 1915, and appropriate costs in the court below.

GUY, J., concurs. COHALAN, J., concurs in the result.